We'll now take our second oral case of the day, 23-3171 U.S. v. Tyree-Peppers. This is Nichols, when you're ready. Good morning, your honors. My name is Paige Nichols, and I represent Mr. Tyree-Peppers, the appellant. May it please the court. When the government found out that Mr. Tyree-Peppers had been arrested on state charges while he was still on his supervised release term, the government got a warrant, a violation warrant, seeking to revoke his supervision. But otherwise, the government just sat on its hands and, quote, waited to see what happened in the state case so they wouldn't have to, quote, go through a whole other process at a revocation hearing. That's how the prosecutor explained the delay to the district court at page 35 in Volume 3 of the Record on Appeal. So the parties now agree that Mr. Tyree-Peppers' supervision term expired. During that nearly three years, he sat in jail blocks from the federal courthouse waiting for his state acquittal. The only question here is whether that three-year wait was reasonably necessary for his revocation proceedings. Is there a subjective component to that? You seem to be basing this on what the prosecutor was saying. Don't we take a reasonable man approach, reasonable person approach to that? Well, we're talking about a jurisdictional requirement here, and it is the burden under this court's authority. It's the burden of the party asserting jurisdiction to establish it. And I'm just sharing— Why isn't it reasonable to say there's a very significant murder prosecution going on? If we try to address that issue in the revocation proceeding, we could screw up the state case, just like there'd be discovery opportunities. You don't like—normally you wouldn't want a civil case tried suing the person for wrongful death or something like that in the course. We give priority to significant criminal prosecutions, don't we? Well, this is the government's argument, of course, and there is no reasonable— Explain what's wrong with the argument. Yes. I'm about to do that. From what I can tell, all the circuit courts to address this have found it to be a good argument. I agree that the circuit courts have all agreed that's a good argument. And I have several responses to the circuit courts. One, I strongly suggest that this court read the dissent in the Garrett case. I discuss it in the reply brief. I think it addresses in great detail where the Ninth Circuit went wrong in Garrett. I also want to point out that both Garrett from the Ninth Circuit and Ramos from the Second Circuit, which are kind of the leading cases on this question, they were decided before the Supreme Court decided in Mont how to interpret the tolling statute. And those were cases where the defendant was in pretrial detention on charges that those defendants were actually convicted of. Post-Mont, those cases would have been resolved under the tolling statute, because under the tolling statute, the supervision terms for those defendants would not have expired. And so this court can distinguish, can decide not to follow those other cases, in part because every one of the cases that the government relies on, that I'm aware of, where the other circuits, and I think there are four of them, have held that it's reasonably necessary to wait until somebody gets convicted in state court or in another federal case, all of those cases predate Mont. And I think even though Mont is about the tolling statute, and we're talking about the jurisdictional statute, that Mont gives a better context for understanding the jurisdictional statute, and that comes after all of those other circuit cases. So they didn't have the benefit of Mont in the context of the tolling statute, because what you end up doing if you adopt a categorical rule like those other circuits have, and like the government seems to be asking this court to do, is you're really basically converting this jurisdictional statute into kind of a tolling statute when somebody is in custody awaiting state criminal charges. But the tolling statute... It seems to me that for the great majority of cases, it is jurisdictional. It prevents the government from proceeding with a revocation proceeding. So it serves a very large purpose. There's an exception. Yes. I guess what I'm saying is that as a practical matter, if this court holds that any time that somebody is in state custody awaiting state criminal charges for those to be resolved, Congress decided not to do that in the tolling statute. In the tolling statute, Congress says, hey, we're not going to count this time when you are in pretrial state custody if it's in connection with... If it falls in a conviction. The same result gets accomplished here if we create a categorical rule. But like Mott said, the fact that the tolling statute excludes time in state custody when you're not convicted means that Congress intended that the defendant is not faulted for conduct he might not have committed. And in a sense, that's what's happening if we create this categorical rule here. But let me go on and talk a little bit more about some other reasons you should reject the other circuit decisions. They don't mention or follow the rule that this court follows that jurisdictional statutes are interpreted strictly against jurisdiction. They don't mention or follow this court's precedent holding that the party asserting jurisdiction has to be the one to establish it. And again, there's no record evidence here of anything that the state court was doing at all. You can probably learn more about that state case by Googling it than you can by looking at the record here. I'm not recommending that you rely on any Google results. But at any rate, there's simply no case-specific evidence here. And we're talking about three years. And we know it's easy for the government to go and go to a revocation proceeding. The standard of proof is lower. OK, so all true, granted that. Isn't the fact that you've got a serious state conviction or charge here pending, a murder charge, sort of important here? If you had the two, say he was in custody for the murder charge, and the government wanted to proceed on the two grade C violations. Which is all they ultimately did. True, but they didn't know that until there was an acquittal. That's a lot different, isn't it, than when you have two grade C violations and a state murder charge. Because the grade C violations could presumably be decided without ever getting into the circumstances of the murder charge, right? Yes, they were. OK, and so the state has a great interest in investigating and prosecuting serious crimes such as murders. You would agree with that, wouldn't you? Sure. OK, and so wouldn't it be the ultimate lack of comedy for us to say that the federal courts have to wade into the state's subject matter on a supervised release violation when the state's interest in proceeding on a murder charge is seemingly much higher than the federal system's supervised release violation? Well, it's the government's choice to pursue violation based on that new crime charge. They can just let it go. If the state is going to give this person a life sentence or whatever they might for their charges, if they're that serious, why not just let the state take care of it? But more importantly, there's three years and no explanation from the government about how bringing a state witness over to federal court in the same town, in the same neighborhood, where everybody is, would have hurt the state. Maybe it'd be good for the state to get a little preview of how its witnesses do. But we're also on a vacation. Maybe it would be bad for the state. Maybe its witnesses would falter. So this conversation we're having here is purely conjectural. It is, but those are the kind of governmental considerations that go into decisions on whether to give the state some latitude to proceed in their case before you decide to bring somebody in into a proceeding that does not follow the rules of evidence, for example. And once the government knew jurisdiction was on the table, the government could have brought some state official into the district court to explain to the district court judge, yeah, there was no way we were going to A, let this guy out on a rip during that full three years that we had him four blocks from the courthouse, or B, this case was so complicated. We were in court all the time. We couldn't make our witnesses available. Or maybe this witness was a sensitive. I mean, there's just nothing there. And again, it's the government's burden to establish that jurisdictional requirement that that three-year delay be reasonably necessary. Do you agree that the state has no duty to cooperate with the feds on this? I don't know the answer to that question, if there's a rip. I mean, if the government decided they were going to call a state witness to come over and tell the judge why they needed to prosecute their case, and the prosecutor said, I am not going to get up in open court and divulge my trial strategy. So had that happened on the record here, that might be the reasonable necessity that the government would need to point to. But I don't think we can just imagine possibilities that would create reasonable necessities. We have to actually have them on this record. And again, it's the government's burden to prove that, and it didn't do any of that. I see my time is ticking down here. I'd like to reserve rebuttal time, but if there are any other questions, I'll address those first. Well, you make a very interesting point about calling in the state prosecutor and how this would affect. I'm trying to think if I've ever seen that sort of record in a case where they discuss issues like this. I think it's just sort of known that things get screwed up if you try to try your case in another venue. But I've given the court plenty of examples of cases in other jurisdictions where it's fairly routine for the supervision revocation proceeding to go even while the state charges are pending. This court has said in— Sometimes it's not that big a deal. Sometimes it's not. I don't know whether it's a big deal here because nobody put on any evidence. I meant it's a big deal if it screws up a murder prosecution. Sure. If it were a lesser offense, then you might not worry so much. Yeah. Revoking supervised release is lesser than a murder prosecution. It may not be lesser than a reckless driving prosecution. But do you have any cases where the sort of evidence you think the prosecution should put on here has actually been proffered? There are so few of these cases where, in fact, the pre-trial detention time ends up with an acquittal. These facts are pretty unique in our case. So my answer is no. But I think that's because of how unique this case is, how rarely people invoke this jurisdictional statute. I have a feeling that it's probably overlooked. I think that the prosecutor in this case— both the judge and the prosecutor were kind of surprised by it. Thank you for answering my question. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Jared Bagg on behalf of the United States.  I think that is borne out in the prosecutor's statement to the judge in this case as to why there was a reason to delay bringing the defendant back into federal custody to try to establish the Grade A violation, which was the murder case here. As we set out in our brief, we were very reluctant to hold a mini-murder trial in federal court. We have an obligation to give deference to the state court's decision to charge their cases, in essence, letting them try their case in advance. You see this in Morales v. Zavara's case, where they talk about the issue of, if the underlying violation is directly related to the state offense, that the state offense can take precedence in having that resolve itself before it moves into the federal system. That's particularly true here, when you have a situation of such great severity of a murder trial. There's another side to this, though. I don't know how much extra time revocations of supervised release could lead to, but either there's a conviction for murder in the state court, and you can expect a significant sentence, or the defendant's acquitted in the state prosecution, so you're probably not going to pursue or the judge isn't going to revoke on that ground anyway. So why not just leave the murder case to state court and proceed on the other allegations of violation? What's the great interest of the state, of the federal government, in pursuing the murder allegations in revocation proceedings? Well, that's a decision, of course, for the United States attorney to make as to whether or not it wishes to pursue that. I can't say that that isn't an option that the United States attorney could have taken under the circumstances, but we're not obligated to do that. The grade A violation was certainly the most serious violation, and that dovetails a little bit into what our position is and what the defendant has rejected here is the idea of prejudice. What is the prejudice that is demonstrated here, and how was he prejudiced in any way by the government's decision not to bring him into federal custody immediately so the state could... Is that relevant to the jurisdictional issue? We think that it is, and the jurisdictional issue here is interesting. 3583I doesn't really read as a typical jurisdictional statute. It appears on its face that the jurisdictional hook is simply that the government filed their warrant in advance of the supervised release period. Being extinguished in this case was in July of 2022, the warrants filed in the fall of 2020. It almost reads like a claims processing rule when you get to the reasonably necessary because the courts are struggling with that term and how to define it. The court in Ramos probably goes to the greatest length in trying to define what reasonably necessary means, but if you peel back what the court in Ramos said, it's quite clear that it deals with the underlying facts that the court must address to determine whether or not a violation has occurred. In this case, those facts are the murder case. Again, to force the government into bringing Mr. Peppers into federal custody to address those particular facts certainly runs counter, Judge Arts, as you mentioned earlier, to really the four primary cases that have addressed 3583I in this case and have all found that allowing the state to resolve the underlying factual issue that is the predicate for the federal offense, it is reasonably necessary to allow that to happen, and that is exactly what occurred here. But it's even more, I think, potent because we are dealing with a very serious homicide case and the government, I think, Judge Carson, to really get to your issue, you asked the question about whether or not the state could sort of deny a federal subpoena as it were. They could try, certainly. We could certainly issue any number of subpoenas to detectives and other individuals in the case, and they may not have wished and wanted to have testified and certainly would have probably expressed those issues. I can tell you just as an officer of the court that the United States Attorney's Office works very closely with district attorneys to try and manage the types of issues that arose here and attempting not to interfere with their underlying cases. That was particularly true here in this type of homicide. Maybe the problem with your case here is that you didn't go ahead and proceed against the defendant on the grade C violations. There was nothing standing in the way of that, you would agree? Yes, we would agree. So you could have ridded the defendant out to proceed on those and then take away and see attitude on the grade A murder violation, right? That is certainly an option, but we would stand by the position that there's nothing that obligates the United States to perform that function under the circumstances. The courts, I think, have made it very clear that there is no obligation for the United States to rip someone out when state proceedings are occurring under the circumstances. It then devolves to the issue of what was reasonably necessary under the circumstances. And I would like to address the issue because the defendant does talk about the fact that it was three years. Well, that may be true, but when you're looking at the timeframe that this court must address as to whether or not it was reasonably necessary, I think you need to look at what the court said in Morales. And if you look at the Morales decision at pages 402 and 403, they indicate that under 3583I, the time that this court looks at under the reasonably necessary standard is at the time that the defendant immediately went into state custody, but rather that time between when the supervised release violation ran and the time that the defendant's ultimate federal violation occurred. In this case, those dates would be between July 4th, 2022, when his supervised release term extinguished, and September 26th of 2023, when the defendant's ultimate revocation occurred in this case. So when you look at that timeframe, it drops down to 13 months and 22 days, approximately. So to say that the government somehow violated his rights because he languished in state custody for three years, that doesn't address what the statute requires. And the statute that we're dealing with is 3583I. At the same time, I understand that the defendant is trying to insert a Mott decision into this case, but that really has no bearing here. This case rises and falls on 3583I. What does the record show about any continuances asked for and granted in the state proceeding? I can't answer that directly. I will tell the court, and I think the court can largely take judicial notice of the fact that this was occurring during the pandemic. And I think that that is not lost on anybody, that during this timeframe, many of the courts were extending their timeframes. I can't... It would be an extra judicial statement to make when I don't know the reasons behind it, but we ask the court to at least take judicial notice of this timeframe, the pandemic was occurring, there were significant shutdowns during this time. Well, I would think... It doesn't encourage me. I would think we could take judicial notice of state court records when the continuances were ordered, couldn't we? Certainly, you could. Whether or not the docket in the Shawnee County District Court would reflect some of those motions, I would think that it probably would under the circumstances. But to the degree that whether or not there were continuances in that case, I don't necessarily believe that it reflects on whether or not this court can... Well, whether or not it would inform this court's decision as to whether or not the district court acted unreasonably here by not having him brought over. Fair enough. I guess my concern is that if the record at the Shawnee County District Court showed that the defendant was requesting continuances and receiving them, then the argument that I was kept in jail all this time and you didn't proceed against me might be a little less effective because the delay was not caused by the United States in that instance. Well, I think that's a fair point. But again, at the end of the day, I think the question does fall back onto what both courts in Morales and Ramos really drive home is, is the government obligated to bring someone into federal custody when the underlying facts that drive the violation in federal court are being litigated in state court? Is the government obligated? And the defendant is essentially asking this court to establish a categorical rule where the government would be required to writ someone out. There is no case law support for that, and there certainly isn't any statutory support for that. Well, I don't know that they're asking for a categorical rule. I mean, I think it could be applied. What they're asking for could be dealt with on a discretionary basis. But it also makes me wonder. I mean, your argument makes me wonder your lack of an obligation to writ them out. I mean, presumably, where a complicated state proceeding is going on, the government could drag their feet forever and keep the hooks of supervised release in a defendant way beyond the expiration date. Well, I think 3583I certainly would address those circumstances. I mean, your contention isn't – would you agree with me in this case if all you had was the grade A violations or the grade C violations that you would have needed to proceed against them earlier? Oh, I certainly think that that weighs against us heavily if we had the grade C violations and had no issue with disturbing the state's prosecution. Okay, so you have a more fact-specific approach here based on interference with an important state prosecution. Absolutely, and I think that's driven by what we stated both in the underlying hearing before the lower court and what we're saying in our brief is that this case is so unique, and I think the court can understand and appreciate the unique nature of the government wanting not – the federal government wanting not to interfere in any way whatsoever with that particular prosecution under the circumstances. Remind me what the record would show in this case about the defendant urging the federal court to take up the supervised release violation sooner rather than later. Were there any requests by the defendant in the proceeding below that too much time was passing that he wanted to be heard on his supervised release violations? Not that we're aware of. We think that, as I understand the record, the only time that it really came up, and you can see this in the district court's decision to hold a second hearing because it felt – the court sort of felt like they were ambushed a little bit by the argument that the case should have been dismissed because the government rang a foul of 3583-I. The court then ordered a briefing and then had that briefing available to it and then finally made a decision in September of 2023 before it decided that it was going to follow the Morales-Izobaras guidance and find that the idea of what is reasonably necessary is somewhat of an elastic term and thought that the government's position that he didn't want to interfere with the state case was sufficient to find that it did not fly by the statute. Let me get back to a question I asked you earlier. I've been trying to think about it a little bit while you're talking. But when you said there wasn't prejudice to defend it, I asked what's that got to do with the jurisdiction? And it occurs to me that maybe whether a delay is reasonably necessary depends on how much the defendant will be prejudiced by delay. But do you have any case authority that suggests that prejudice is relevant, possible prejudice is relevant to the jurisdictional issue? We do. So if you look at Ramos, Pelnitz, and Mapp, Ramos talks directly about prejudice at page 116. And it gets to the issue of the defendant's inability to defend against the charges. So they talk to prejudice directly. In Pelnitz, at page 571, they talk about prejudice. In Mapp, at page 607, they talk about prejudice. And Morales-Izobaras talks about the legitimate interests of the defendant, which we think is encompassing of prejudice. Because at the end of the day, when you look at the jurisdictional aspect of 3583I, our position is that it acts in part as almost a claims processing issue, which really establishes a balancing test in our opinion. What are the interests of the government? What are the interests of the defendant under the circumstances? And the defendant can show absolutely no prejudice under the circumstances here. Because one, the government decided to forego the grade A violation. And two, the grade C violations, by and large, were readily and easily presented. Even some of them indicate or were stipulated to by the defendant. And I see that my time is up. Unless the court has any further questions, we would ask the court to affirm the lower court's decision to revoke supervised release. Thank you. Thank you. OK. If I may follow up on the last point. Sure thing. So what was the prejudice? He was, um, it was the image. It's a jurisdictional statute. No, no, no, no, no. I'm so sorry, Your Honor. I'm very excited all this time. But OK, so what happened to him as a result? Was his supervised release revised at all as a result of this? Oh, he was given a full year additional supervision term, even though it had expired. But no confinement, but an additional year of supervised release. Yes, that's right. Yes, yes, yes, yes. And prejudice doesn't have anything to do with whether something's reasonably necessary. You know, I was trying to think of an example of how it's very clear that prejudice isn't part of this. First, the cases that the government is talking about, those are the due process sections of those decisions, not the jurisdictional sections of those decisions. But second, say the judge puts off the hearing because the judge wants to stay home and finish binge-watching all seasons of Real Housewives. Well, then we go to the revocation hearing, and there's no prejudice there. That sort of calumny is not acceptable. That's not acceptable? Yes. Well, I wanted an example where it's very clear that the delay is not reasonably necessary, and whether or not the defendant was prejudiced based on that delay doesn't affect whether the court had jurisdiction. And the government suggests – so three other things I want to say real quick. The government suggests, well, maybe this isn't a jurisdictional statute after all. That's the first time I've heard them say that. The government assumed it was jurisdictional in its briefing, but my answer is this. It starts with the power of the court. That's the language we use when we talk about jurisdiction. And second, this court, the Supreme Court, and every other circuit I've read has either assumed or straight up decided this is a jurisdictional statute. When criminal cases are over, that courtroom is closed until unless there's a statute authorizing the court to take some further action. This is a jurisdictional statute. Second, the time period, whether it's between the expiration and the revocation date, that's a fair reading of the statute, sure. So maybe there was just a year that we have to ask whether it was reasonably necessary. But it becomes a lot harder for the government to defend that full year when we know it had two years before then to get its revocation ducks in a row. So that's why I keep talking about the three years, though I understand that the statute itself suggests that the time limit or the delay that we are concerned with whether that last year is reasonably necessary. And it wouldn't have been standing on its own, and it certainly isn't when the government had two years before that. He does not have to ask to be written out to federal courts so that the government can retain jurisdiction to send him back to prison or extend his supervision. No party ever has to tell another possible party how to keep jurisdiction to do something to them, to sue them or to try to put them in prison. But as a practical matter, it doesn't make sense to talk about this either. So you don't think it matters for a defendant to press their rights? Certainly in the speedy trial realm, it matters. It does, but that's not a jurisdictional statute. This is one thing that's very different about this because it's jurisdictional. But as a practical matter, look at that warrant. It says at the bottom, this warrant shall not be disclosed to counsel. So the defendant in state custody, maybe he knows he has a federal hold on him. Maybe he does. But he might not because those warrants are typically sealed until the I mean, there's an argument in your briefing that there was a federal detainer, right? I think there was. Or maybe it was in the district courts comically. Yeah, so there's probably a federal detainer. But the other point I wanted to make about practicalities is that typically we or counsel generally is not appointed until that warrant is executed. So he had counsel. Because there was already a supervised release, the two grade C. Yeah, but there hadn't been any proceedings on that yet. So there hadn't been counsel appointed on that yet. I don't think. I don't think. We didn't get appointed until they executed the warrant at the end of the state case. You're well over your time. I'm finished. I have over my time. Thank you very much.